### FISHER et al. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. November 16, 1925.)

No. 1875.

**1. Arrest ⟨key⟩63(4)—Criminal law ⟨key⟩394—Evidence held admissible, as obtained by arrest for felony committed in officers' presence.**

Evidence that government agents, after seeing truck loaded with whisky from motorboat drive off, and after other cases had been unloaded on dock seized person in charge of boat, and that defendants soon arrived with another truck and automobiles, *held* to show probable cause for believing defendants were engaged in a felony, which justified their arrest without warrant, and rendered admissible evidence that all defendants were armed, and that automobiles which they brought were, by removal of rear seats, adapted for trucking purposes.

**2. Indictment and information �gă137(4)—Refusal to strike paragraphs of indictment charging particular overt acts not error.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), refusal to strike out paragraphs alleging overt acts committed before certain defendants arrived at docks where whisky was being handled, on grounds that unknown persons who aided in such acts were separate group from defendants, who later arrived, *held* not error; that question being for jury.

**3. Criminal law ⟐742(1)—Credibility of witnesses is for jury.**

Credibility of witnesses is for jury.

**4. Criminal law ⟐423(1)—Evidence as to statements of alleged conspirator shortly after arrest held not inadmissible, on theory that conspiracy had then been frustrated.**

In prosecution, under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) evidence as to statements made by one of defendants, shortly after arrest, when all of defendants were present in attempted performance of alleged conspiracy, *held* not inadmissible, on theory that conspiracy had then been frustrated.

**5. Witnesses ⟐337(5)—Evidence on cross-examination that one defendant previously pleaded nolo contendere to like charge held admissible, as affecting his credibility.**

Permitting defendant to be asked on cross-examination whether or not he had previously pleaded nolo contendere to indictment charging like offense and been fined therefor, as affecting his credibility, *held* not error; objection being made only to competency of evidence, and not to method of proof, such evidence being also competent under Gen. Laws R. I. 1923, § 5027, whether former offense was felony or misdemeanor.

**6. Criminal law ⟐1043(1)—Technical objection that record should have been introduced not open under objection made.**

Where, at time district attorney asked defendant on cross-examination whether he pleaded nolo contendere to indictment for certain offense, both counsel and court understood that district attorney had record before him, and objection went only to competency of evidence, technical objection that record should have been put in cannot be urged on writ of error.

In Error to the District Court of the United States for the District of Rhode Island; George F. Morris, Judge.

Thomas K. Fisher and others were convicted of conspiracy to violate the National Prohibition Act, and they bring error. Affirmed.

Daniel T. Hagan, of Providence, R. I. (John J. Rosenfeld and Charles A. Kiernan both of Providence, R. I., on the brief), for plaintiffs in error.

Harold A. Andrews, of Providence, R. I. (Norman S. Case, of Providence, R. I., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Under section 37 of the Criminal Code (Comp. St. § 10201), the defendants Thomas K. Fisher, Dominick Fisher, Peter E. Fitzpatrick, Walter E. Bouchard, J. Cleo Jalbert, and John A. Brannigan were indicted for conspiracy to possess and transport intoxicating liquor in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). Joseph McNeil was indicted as a co-conspirator, but was not arrested and tried. The overt acts alleged in five paragraphs were summarized:

(1) That on the evening of December 21, 1923, McNeil and persons unknown brought a motorboat to a dock in Nock's shipyard in East Greenwich, R. I., containing a cargo of intoxicating liquor, and transferred from the boat 150 cases of whisky to a motor truck on the dock, which was thereupon driven away to some place unknown.

(2) That McNeil and other unknown persons then transferred about 20 cases from the boat to the dock.

(3) That, shortly after the motorboat had left the dock, all of the defendants, except McNeil, arrived, with three automobiles and a motor truck.

(4) That the defendants brought these vehicles to the dock for the purpose of transporting illegally from the motorboat intoxicating liquor to some place unknown, for beverage purposes.

(5) That the defendant Thomas K. Fisher, being the leader and in charge of the party of defendants, led and guided them to said dock for the purpose of transporting intoxicating liquor, etc.

The government's evidence tended to show that in the early evening of December 21, 1923, a motorboat loaded with liquor docked at Nock's shipyard; that McNeil went to the house of one Cassevant, who lived nearby, and got him to help unload about 150 cases of whisky from the boat to a truck, which thereupon departed; that Cassevant waited around for another truck, drinking liquor, until perhaps 11 o'clock, about 20 other cases being meantime unloaded upon the dock; that then government agents appeared and the other men ran away; that the boat pulled off; that the government agents emptied their pistols in the direction of the boat; that the government agents seized McNeil

and took from him a pistol, which he carried (as he claimed) for his own protection; that McNeil talked with Kelly, who had charge of the government agents, for about 15 minutes, and that as a result of what McNeil said the agents waited; that a few minutes later a Reo truck, driven by Dominick Fisher, arrived; that when the government agents jumped upon the running board, Fisher put his hand into his right overcoat pocket, and a government agent grabbed him and took from his pocket a revolver; that a few minutes later Thomas Fisher drove up, having Jalbert in the car with him; that shortly another machine with Brannigan drove up; that a little later a third car arrived, with Bouchard and Fitzpatrick; that, as these three cars arrived, the federal agents searched them, and found the rear seats removed from one or more of them, and took from each car a pistol, all of which were admitted in evidence, subject to the defendants' exceptions. Kelly testified that he talked with Thomas K. Fisher, in the hearing of all the other defendants, and that Fisher said that all the men, with the exception of Jalbert, were employees of his, and that none of the defendants denied that they were acting under Thomas Fisher; that Fisher said that Jalbert was a young fellow who worked in Providence, and that he just took him along for a ride. Kelly told Fisher that he was going to take the defendant to the Federal Building, whereupon Fisher said, "I will guarantee they will all go down there," and they all did go down there. The trucks and automobiles were not seized. At the trial, all the defendants, except Thomas K. Fisher and Dominick Fisher, took the stand and denied that they had made any agreement to possess or transport liquor.

The defendants were all convicted and sentenced. The case comes up on 11 assignments of error, involving four contentions.

[1] The first contention is that the court erred in admitting in evidence the pistols seized when the defendants arrived, and also the evidence that the automobiles were, by the removal of their rear seats, adapted for trucking purposes. This contention is without merit. This is a case of conspiracy to transport liquor in violation of the National Prohibition Act—a felony. The evidence warranted the trial court in finding and ruling that the government agents had probable cause to believe that these defendants, arriving at this dock almost simultaneously with a truck and automobiles adapted to transporting liquor, all armed, were then and there engaged in committing a felony.

It follows that the right of arrest and search of persons without warrant, even by a private person, was lawful. Brady v. United States (C. C. A.) 300 F. 540, 543; Agnello v. United States (C. C. A.) 290 F. 671, 679 and authorities cited. See, also, Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (March 2, 1925).

[2] The next contention is that the court erred in overruling the defendants' motion to strike out paragraphs 1, 2, and 3 of the overt acts.

The argument is that the evidence showed that McNeil, Cassevant and the men on the boat, who helped take from the boat the first 150 cases of liquor, were a separate group from Fisher and the other defendants, who arrived later. This, on all the evidence, was a question of fact for the jury. It is plain enough that the jury might find, from the conduct of the parties, that an arrangement had been made by the defendants, with McNeil and others unnamed, to transport the liquor brought to this dock by this boat. The conspiracy was the gist. If there was evidence of the conspiracy, and there plainly was, McNeil's conduct in helping unload from the boat the first truckload was an overt act in furtherance of the conspiracy.

At most, the first three allegations of overt acts were mere surplusage, as the court below in effect ruled. In no aspect was there reversible error in refusing to strike out these allegations.

[3] It is also urged that the court should have ordered a verdict in their favor, mainly on the ground that the facts were as compatible with innocence as with guilt. It is true that the defendants, other than the two Fishers, offered explanations of their presence which, if believed by the jury, would have shown that they were not employed by, or in conspiracy with, the Fishers, illegally to transport liquor. The jury were not required to believe, and obviously did not believe, their stories. Of course, all questions of credibility were for the jury. Their arrival, with cars adapted for trucking, containing pistols, shortly after Thomas Fisher came with a truck; their alleged failure to deny Fisher's statement, in their presence, that all of them except Jalbert were his employees; their compliance with Fisher's promise that they would report at the Federal Building— these, and other facts not necessary to be recited, were far more consistent with guilt than with innocence.

[4] Nor is there anything in the contention that Thomas Fisher's statements were inadmissible, on the ground that the conspiracy

had then been frustrated. The evidence warranted the jury in finding that all of the defendants were then and there present in attempted performance of their agreement to transport liquor; that the conspiracy was alive and in process of performance.

[5, 6] The last point requiring consideration is that the court erred in admitting, on the cross-examination of the defendant Fitzpatrick, the following question:

"Are you the Peter E. Fitzpatrick who, on December 12, 1923, in the United States District Court, Boston, Massachusetts, paid a fine of $250—pleaded nolo contendere to an indictment charging you with conspiracy to import liquors into the United States, and who on that same day was fined by Judge Morton $250?"

After discussion of the authorities, this question was admitted, subject to defendant's exception. But before its admission the United States Attorney stated: "I have a certified copy from the clerk in Boston of his conviction of conspiracy to import liquor with two or three other people." In the defendants' brief it is stated, fairly enough, that when this question was asked the government counsel apparently had the record before him. The record shows beyond question that, when the court ruled, both counsel and the court understood that the United States attorney had the record; that the objection went, not to the method of proof, but to the competency of the evidence; and that the court admitted the evidence merely as affecting the credibility of the witness. Under these circumstances, it is not now open to the defendants to urge the technical objection that the record should have been put in. The only question is as to the competency of the evidence. The prior conviction was not of a misdemeanor, but a felony. The evidence was therefore not incompetent, under the ruling made by this court in Solomon v. United States, 297 F. 82, 92, 94. It was also competent under the Rhode Island statute (Gen. Laws 1923, § 5027), even if the prior conviction had been only of a misdemeanor. That statute reads as follows:

"Chapter 342 (5027) Sec. 43. No person shall be deemed an incompetent witness because of his conviction of any crime, or sentence to imprisonment therefor; but shall be admitted to testify like any other witness, except that conviction or sentence for any crime or misdemeanor may be shown to affect his credibility."

It is not contended that the sentence on the plea of nolo contendere was not, for present purposes, equivalent to a sentence on a plea of guilty. Compare State v. Herlihy, 102 Me. 310, 66 A. 643; State v. Conway, 20 R. I. 270, 38 A. 656; Com. v. Horton, 9 Pick. (Mass.) 206; State v. Henson, 66 N. J. Law, 601, 50 A. 468, 616; Tucker v. United States, 196 F. 260, 116 C. C. A. 62, 41 L. R. A. (N. S.) 70, and note, page 74.

We find nothing else in the record calling for discussion.

The judgment of the District Court is affirmed.